UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEITH MCDAY,

Plaintiff,

-v-

CITY OF NEW YORK, *et al.*,

Defendants.

25-CV-2265 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Keith McDay, proceeding pro se, brings this action against the City of New York and New York Police Department Officer Anthony Taccetta (collectively, the "City Defendants") and the Plaza Rehab Nursing Center, Felipe Fernandez, and Andrew Raju (collectively, the "Center Defendants"). Before this Court are the City Defendants' motion to dismiss the First Amended Complaint (the "Amended Complaint"), the Plaza Defendants' motion to dismiss the Amended Complaint, and the Center Defendants' motion to remand the matter to state court. For the reasons that follow, the motions to dismiss are granted and the motion to remand is denied as moot.

## I.    Background

### A.    Factual Background

The following factual allegations are taken from the Complaint and other filings made by McDay, and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013); *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013).

McDay resides at 2250 Webb Avenue, Bronx, New York. (ECF No. 35 ("Am. Compl.") ¶ 6.) On December 4, 2024, McDay was arrested at his home and charged with Criminal

1

Trespass in the Second Degree, Criminal Trespass in the Third Degree, Assault in the Third Degree, Menacing in the Third Degree, and Harassment in the Second Degree. (*Id.* ¶¶ 14-15.) The arresting officers did not show McDay an arrest warrant when asked. (*Id*. ¶ 16.) The charges, as reflected in the criminal complaint prepared by Taccetta, concerned two separate incidents at the Plaza Rehab Nursing Center (the "Center"), located at 2545 University Avenue in the Bronx. (*See* ECF No. 36 at 6-7.) The first incident occurred on the evening of November 4, 2024. Felipe Fernandez, a security guard at the Center, informed Taccetta that he had observed McDay inside the Center that evening. (*Id.* at 6.) Fernandez informed Taccetta that the Center is a nursing home facility with posted signs stating no trespassing, a locked entrance door, and posted signage featuring McDay's name and photograph stating no trespassing. (*Id.*) Fernandez informed Taccetta that McDay did not have permission or authority to enter or remain inside the Center. (*Id.* at 6-7.) The second incident occurred on November 13, 2024. Andrew Raju, another employee of the Center, informed Taccetta of this later incident, where McDay forcefully threw a quarter at Raju while in the Center, striking Raju between the eyes. (*Id.* at 7; Am. Compl. ¶ 10.) Raju informed Taccetta that he sustained injuries and feared for his physical safety as a result of McDay's conduct. (ECF No. 36 at 7.)

In his opposition, McDay alleges that Fernandez, Raju, and others had been approaching McDay in McDay's backyard as early as September 2024, with each encounter ending with Fernandez and Raju threatening to harm McDay. (ECF No. 47 at 6.) In the same document, McDay alleges that he called 911 on November 8, 2024, because of the threats. (*Id.* at 7.)

The charges against McDay were dismissed on speedy trial grounds on March 12, 2025. (Am. Compl. ¶ 17; ECF No. 36 at 8.) McDay commenced the present suit on March 19, 2025. (ECF No. 1.) On May 30, 2025, the City Defendants filed a motion to dismiss the initial

complaint.  (ECF No. 31.)  McDay then filed the Amended Complaint alongside a "Declaration in Opposition" to the motion to dismiss, which attached the criminal complaint against McDay and the Certificate of Disposition on those charges (ECF No. 36).  The Center Defendants subsequently filed a motion to dismiss the Amended Complaint, with an accompanying memorandum in support.  (ECF No. 41; ECF No. 41-1 ("Center Mem.").)  The City Defendants then filed their motion to dismiss, with an accompanying memorandum in support.  (ECF No. 42; ECF No. 43 ("City Mem.").)  McDay filed a letter in opposition to the Defendants' motion to dismiss (ECF No. 44) and a "Declaration in Opposition" to the City's motion to dismiss (ECF No. 47).  The City Defendants filed a reply in further support of their motion.  (ECF No. 52.)

## II.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  All reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff.  *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Additionally, courts "must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quotation marks omitted).  However, courts are "not bound to accept conclusory allegations or

3

legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quotation marks omitted).

In deciding a motion to dismiss, courts may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quotation marks omitted). "Although courts generally may not look outside the[se] pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials." *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted). "Accordingly, where a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Id.* (quotation marks omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

## III.   Discussion

The Amended Complaint asserts four claims against the City Defendants: false imprisonment under 42 U.S.C. § 1983; malicious prosecution under § 1983; conspiracy to violate civil rights under § 1983; and a § 1983 *Monell* claim against the City. (Am. Compl. ¶¶ 31-55.) The Court takes each in turn before considering McDay's claims against the Center Defendants.

### A.    Claims Against City Defendants

#### 1.    False Imprisonment

"A § 1983 claim for false [imprisonment], resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] is substantially the same as a claim for false [imprisonment] under New York law." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021); *see also Liranzo v. United States*, 690 F.3d 78, 91 n.13 (2d Cir. 2012) (noting that New York treats false arrest and false imprisonment synonymously). "Under New York law, to prevail on a claim for false [imprisonment], a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (cleaned up).

"Probable cause is a complete defense to a constitutional claim of . . . false imprisonment." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citations omitted). "An arresting officer has probable cause when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quotation marks omitted). "If there is probable cause to arrest a plaintiff for *any* crime—whether or not that particular crime was closely related to the offense the officers said was the reason for the arrest—then a plaintiff cannot prevail." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (quotation marks omitted). Courts may dismiss a complaint "on the basis of an affirmative defense [like probable cause] where such defense appears on the face of the complaint." *Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007) (summary order); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995) (affirming dismissal of false arrest claim on probable cause grounds).

McDay alleges that Taccetta intentionally confined him without consent or lawful jurisdiction when he caused criminal charges to be filed against him, resulting in his arrest. (Am. Compl. ¶¶ 14-15, 31.) However, although McDay states that "detention was not supported by probable cause or any other legal basis," he provides no factual allegations in support of that conclusory assertion. (*Id.* ¶ 32.) Instead, the exhibits that McDay cites in the Amended Complaint (*see id.* ¶¶ 14, 17) and attaches alongside his opposition (ECF No. 36), and thus which this Court may consider, *Walker*, 717 F.3d at 122 n.1, make probable cause "clear from the face of the [Amended Complaint]." *Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 184 (S.D.N.Y. 2017) (quotation marks omitted). The criminal complaint indicates that Taccetta acted based on allegations made by Fernandez and Raju, the purported victims of McDay's alleged conduct, that McDay had trespassed onto the Center and had hit Raju with a quarter. (ECF No. 36 at 6-7.) These allegations were made by identified victims with specificity as to the place, time, and manner of the alleged crime, and made clear that the Center was a private facility which McDay did not have permission to enter. (*Id.*) Because Taccetta was "advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime," he "ha[d] probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119; *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or [an] eyewitness." (quotation marks omitted)).

Although McDay contends that the accusations against him were false (ECF No. 47 at 7; Am. Compl. ¶ 38), he offers little factual support for this proposition, absent his suggestion in his opposition that the allegations may have been retaliation or a cover-up for wrongdoing (ECF No.

6

57 at 7).[1] *Barkai v. Neuendorf*, No. 21-CV-4060, 2024 WL 710315, at *14 (S.D.N.Y. Feb. 21, 2024) (noting such a conclusory statement is insufficient because "an arrestee's protestations of innocence" do not "necessarily vitiate probable cause").  Moreover, the dismissal of the charges against him on speedy trial grounds does not establish that Taccetta lacked probable cause.  *See Garrett v. City of New York*, No. 10-CV-2689, 2011 WL 4444514, at *8 (S.D.N.Y. Sept. 26, 2011) ("The fact that an indictment was subsequently dismissed on [speedy trial] procedural grounds does not negate the presumption of probable cause.").[2]

But even assuming that the accusations were false, the Amended Complaint does not allege that Taccetta should have known about the falsity of such statements at the time the arrest was made.  See *Betts*, 751 F.3d at 83 ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it." (quotation marks omitted)).  Indeed, McDay offers no allegations as to whether Taccetta knew about the prior relationship between him, Fernandez, and Raju, or knew of any other facts that would give rise to a doubt as to the veracity of the accusations in the criminal complaint.  *Id.* And even if Taccetta had known about the ongoing disputes, that alone would not undermine

---

[1] McDay also contends that he could not have committed trespass because the incident occurred where he lives.  (ECF No. 36 ¶ 13.)  But his own complaint refutes that allegation, as it states that he lives at 2250 Webb Avenue in the Bronx, whereas the criminal complaint states that the alleged trespass happened at 2545 University Avenue in the Bronx.  (*Compare* Am. Compl. ¶ 6 *with* ECF No. 36 at 6.)  The Court thus need not consider these allegations, which are inconsistent with allegations in the complaint.  *Alsaifullah*, 2013 WL 3972514, at *4 n.3.  In any event, McDay has offered no allegations suggesting that Taccetta would have or should have known that McDay was not trespassing.  *Betts*, 751 F.3d at 83.

[2] McDay further argues that the dismissal of the criminal charges against him precludes Defendants from arguing that the arrest was lawful.  (ECF No. 36 ¶ 14.)  But a speedy trial dismissal is not an adjudication on the merits and therefore "cannot be used to bar litigation of issues, claims, or facts."  *Wilson v. McMullen*, No. 07-CV-948, 2010 WL 1268055, at *5 (E.D.N.Y. Mar. 30, 2010).

Fernandez's and Raju's credibility. *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 30-31 (E.D.N.Y. 2015) (Bianco, J.) ("[T]he fact that a victim may be entangled in a . . . dispute does not, in and of itself, undermine the victim's veracity.").

Absent any allegations that Taccetta had reason to believe that the allegations against McDay were false, McDay fails to rebut the clear showing of probable cause established by the criminal complaint. Accordingly, the City Defendants' motion to dismiss McDay's claim for false imprisonment against Taccetta is granted.

### 2.    Malicious Prosecution

"To state a 42 U.S.C. § 1983 claim for malicious prosecution, a plaintiff must plead both a violation of his rights under the Fourth Amendment and the elements of a malicious prosecution claim under state law." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (quotation marks omitted). "Under New York law, a malicious-prosecution claim requires a plaintiff to show (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Id.* at 163-64 (quotation marks omitted). "Where a plaintiff '[can]not establish one of the elements of his malicious prosecution claim' under state law, a district court may dismiss the Section 1983 claim without deciding whether the alleged malicious prosecution amounted to a violation of the plaintiff's constitutional rights. *Smith v. Ware*, No. 17-CV-5152, 2019 WL 2616194, at *4 (S.D.N.Y. June 26, 2019) (quoting *Singer*, 63 F.3d at 116).

McDay fails to state a claim for malicious prosecution against Taccetta. As with false imprisonment, "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quotation marks omitted). "Probable cause, in the context of malicious prosecution, has been described as

such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* at 243 (cleaned up). "For malicious prosecution purposes, the determination of probable cause is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." *Drummond v. Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007) (quotation marks omitted). Furthermore, "in the Fourth Amendment malicious prosecution context, probable cause must support *each* charge brought by the prosecution." *Alexander*, 132 F.4th at 158 (emphasis in original). "[W]here there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

For the reasons discussed above, the undisputed facts establishing probable cause as to McDay's arrest also establish probable cause as to the malicious prosecution claim. The criminal complaint attached to McDay's opposition to the first motion to dismiss makes apparent that probable cause supported each of the charges filed against McDay. (*See* ECF No. 36 at 6-7.) Under New York law, a person commits criminal trespass in the third degree when he knowingly enters a building "which is fenced or otherwise enclosed in a manner designed to exclude intruders." N.Y. Penal Law § 140.10(a). A person commits criminal trespass in the second degree when he knowingly enters or remains unlawfully in a dwelling. N.Y. Penal Law. § 140.15(1). "Here, the record . . . establishes as a matter of law that the officers, upon hearing the complaint of [Fernandez], had probable cause to believe that [McDay] had committed criminal trespass," *Broyles v. Town of Evans*, 147 A.D.3d 1496, 1497 (4th Dep't 2017), given Fernandez's statement that the Center is a dwelling that has a locked entrance and "no trespassing" signs posted, some specifically containing McDay's name and photograph. (ECF No. 36 at 6.) The named "witness[es'] identification of [McDay] established an objectively

9

reasonable basis for a finding of probable cause to arrest and prosecute [McDay]." *Drummond*, 522 F. Supp. 2d at 678. And although McDay makes conclusory allegations as to the falsity of Fernandez's accusations, he has not provided any support for the proposition that Taccetta believed the allegations in the criminal complaint to be false. McDay also "fails to establish the existence of evidence uncovered after the arrest that successfully vitiates probable cause." *Id*. (*See* ECF No. 36 at 6-7.)

Likewise, McDay's filings make clear on their face that there was probable cause to prosecute McDay for assault in the third degree, harassment in the second degree, and menacing in the third degree. A person is guilty of assault in the third degree when he intentionally or recklessly causes physical injury to another person. N.Y. Penal Law § 120.00. A person is guilty of harassment in the second degree when, with intent to harass, annoy, or alarm that person, he subjects another person to physical contact or engages in a course of conduct that alarms or seriously annoys such another person and serves no legitimate purpose. N.Y. Penal Law. § 240.26(1), (3). A person is guilty of menacing in the third degree when, by physical menace, he intentionally places another person in fear of imminent serious physical injury or physical injury. N.Y. Penal Law § 120.15. Here, Raju's "report of assault to the authorities and his visible injuries" establish probable cause for assault in the third degree. *Ziming Shen v. City of New York*, 725 F. App'x 7, 13 (2d Cir. Feb. 9, 2018) (summary order). That same victim report, given in detail as to McDay's conduct and the resulting injury, establishes probable cause for the second-degree harassment charge and third-degree menacing charge. *See Hughes v. City of New York*, No. 18-CV-09380, 2021 WL 4295209, at *8 (S.D.N.Y. Sept. 21, 2021); *Niles v. O'Donnell*, No. 17-CV-1437, 2019 WL 1411068, at *7-9 (S.D.N.Y. Feb. 21, 2019) (holding that a complaint to 911 and prompt identification of plaintiff as the perpetrator established probable

cause for each element of menacing in the second degree), *report and recommendation adopted*, No. 17-CV-1437, 2019 WL 1409443 (S.D.N.Y. Mar. 28, 2019).  Again, McDay makes no showing that Taccetta "uncovered any information *after* plaintiff's arrest that undermined the initial probable cause determination." *Niles*, 2019 WL 1411068, at *9.  "Thus, the same probable cause that supported plaintiff's arrest defeats his claim for malicious prosecution." *Id.*

In any event, McDay fails to allege actual malice as a motive for Taccetta's actions.  "In a section 1983 malicious prosecution case, malice does not require actual spite or hatred, but rather means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Livingston v. Mejia*, No. 20-CV-2009, 2022 WL 976808, at *5 (S.D.N.Y. Mar. 31, 2022) (cleaned up).  But McDay's filings make no mention of Taccetta's mental state besides the conclusory allegation that Taccetta acted "with malice."  (Am. Compl. ¶ 34; ECF No. 47 at 10.)  There are no allegations that, for example, Taccetta said anything to McDay that evinced an improper motive, or that Taccetta would have had a motive to improperly initiate prosecution against McDay.  *Cf. Alexander*, 132 F.4th at 159.  And because there is probable cause, the Court cannot infer malice.  *Id.*  Absent any indication that Taccetta acted with improper motive, McDay's conclusory allegation that Taccetta acted with malice does not rescue his claim.

Accordingly, the motion to dismiss McDay's malicious prosecution claim is granted.

### 3.    Conspiracy Claim

In addition to his substantive claims under § 1983, McDay also asserts a § 1983 claim for conspiracy to violate civil rights against Taccetta and the Center Defendants.  (Am. Compl. ¶¶ 49-51.)  "[A] § 1983 claim may be proved by showing that a person acting under color of state law collaborated or conspired with a private person to deprive the plaintiff of a constitutional right." *Singer*, 63 F.3d at 119 (cleaned up).  However, "Section 1983 is only a

grant of a right of action; the substantive right giving rise to the action must come from another source." *Id.* "Therefore, . . . the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Id.*

Because the Court dismisses McDay's substantive federal claims for failure to state a claim, it also dismisses McDay's conspiracy claim. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy.").

### 4.    *Monell* **Claim**

Under Section 1983, "[a]n individual may recover damages for a violation of constitutional rights by municipal officials if the unconstitutional action was caused by an official policy or custom." *Platsky v. New York City Police Dep't*, No. 22-CV-9681, 2024 WL 3104516, at *3 (S.D.N.Y. June 24, 2024) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)), *aff'd sub nom. Platsky v. City of New York*, No. 24-1925-CV, 2025 WL 1429470 (2d Cir. May 19, 2025). However, "*Monell* claims fail in the absence of a constitutional harm." *Id.* at *4.

As discussed above, the Court concludes that McDay fails to adequately allege a constitutional violation. "[A] plaintiff cannot sustain a section 1983 claim against a municipality without establishing a violation of his constitutional rights." *LaFontaine v. City of New York*, No. 08-CV-1555, 2009 WL 3335362, at *11 (S.D.N.Y. Oct. 14, 2009). "[Because] [McDay] cannot state a cognizable claim for any alleged violation of his constitutional rights . . . it follows then, that he also cannot state a claim that a municipal policy or custom caused the violation of such rights." *Evans v. City of New York*, 21-CV-8659, 2023 WL 2574994, at *5 (S.D.N.Y. Mar. 20, 2023). Accordingly, the motion to dismiss McDay's *Monell* claim is granted.

### B.    Claims Against Center Defendants

McDay brings substantive claims under New York law against the Center Defendants. (Am. Compl. ¶¶ 37-48.)  He also asserts a conspiracy claim under § 1983.  (*Id.* ¶¶ 49-51.)  The Court considers the § 1983 claim first before turning to the remaining state law claims.

### 1.    Conspiracy Claim

McDay brings a § 1983 conspiracy claim against the Center Defendants, alleging that they entered into an agreement with Taccetta to maliciously prosecute him.  (Am. Compl. ¶¶ 49-51.)  "While substantive claims under § 1983 are normally brought only against state officials, a § 1983 claim may be proved by showing that a person acting under color of state law collaborated or conspired with a private person to deprive the plaintiff of a constitutional right." *Singer*, 63 F.3d at 119 (cleaned up).  "[A]lthough the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."  *Id.*

McDay's conspiracy claim against the Center Defendants fails for the same reason that the claim against Taccetta fails:  Because McDay fails to establish a claim for false arrest or malicious prosecution under § 1983, "he may not maintain a § 1983 cause of action for conspiracy."  *Curley*, 268 F.3d at 72.

### 2.    Remaining State Law Claims

Because the Court dismisses all of McDay's federal law claims, it must now consider whether it has jurisdiction over McDay's remaining state law claims against the Center Defendants.  To establish that this Court has diversity jurisdiction over his state law claims, McDay would have to show that none of the three Center Defendants—the Center, Fernandez, and Raju—are citizens of the same state that he is.  *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51 (2d Cir. 2000) (Sotomayor, J.).  The Amended Complaint does not

13

indicate the citizenship of the Center, Fernandez, or Raju.  Moreover, the Amended Complaint only asserts supplemental jurisdiction over the state law claims, suggesting that McDay does not believe there to be diversity jurisdiction.  (Am. Compl. ¶ 4.)  As a result, the Court cannot determine if there is complete diversity.  *See Livingston*, 2022 WL 976808, at *7.

Absent federal question or diversity jurisdiction, the Court must consider whether to exercise supplemental jurisdiction over the state law claims.  A court has supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  But even where supplemental jurisdiction is available, district courts may decline to exercise such jurisdiction if, among other things, "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).  Because "the traditional values of judicial economy, convenience, fairness, and comity" are not served by maintaining jurisdiction over McDay's state law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims at this early stage in the litigation.  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).  However, because the Court dismisses the state law claims on jurisdictional grounds, McDay may still choose to replead these claims in state court.  *See Livingston*, 2022 WL 976808, at *7.

Accordingly, the Court dismisses McDay's state law claims against the Center Defendants without prejudice to refiling in state court.  The Center Defendants' motion to remand the matter to state court is denied as moot.

14

### C.    Leave to Amend

Neither McDay nor the Defendants address whether the Court should grant McDay leave to amend his complaint.  "Rule 15 instructs the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  A *pro se* complaint "should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives *any* indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (cleaned up).  McDay has already amended his complaint once.  (*See* Am. Compl.)  However, because McDay "could remedy the inadequacies identified" herein, the Court grants McDay leave to amend if he so chooses.  *See Shomo*, 579 F.3d at 184.

## IV.    Conclusion

For the foregoing reasons, the City Defendants' motion to dismiss is GRANTED with prejudice and the Center Defendants' motion to dismiss is GRANTED with prejudice as to the § 1983 conspiracy claim and without prejudice to refiling in state court as to the state law claims.  If McDay chooses to file an amended complaint, such a complaint must be filed within 30 days of the date of this Order.  If no amended complaint is filed within that time, the Court will enter judgment, permitting an appeal to the United States Court of Appeals for the Second Circuit.

The Clerk of Court is directed to close the motions at Docket Numbers 31, 41, and 42.

The Clerk of Court is also directed to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated:  February 27, 2026
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

15